UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ARNOLD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV198 RWS |
| | ) | |
| AMADA NORTH AMERICA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Christopher Arnold's fingers were crushed by a press brake machine designed and manufactured by Defendant Amada North America. His complaint asserts defective design and failure to warn claims against Amada and seeks to recover damages for his injuries. Arnold named Dr. David Peters as an expert witness in support of his claims. Amada has filed a motion to exclude Peters as a witness arguing that he is not qualified to testify an expert in this matter. After reviewing the evidence in support of Peters' qualifications as an expert, I find Peters is not qualified to offer reliable expert testimony concerning the design of a press brake machine and the failure to warn claim. As a result, I will grant Amada's motion to exclude.

Amada has also fled a motion for summary judgment. Amada asserts that if Peters is excluded as an expert in this matter, Arnold's claims must be dismissed because he will not be able to support his claims as a matter of law. I will grant the motion for summary judgment because Arnold is not able to establish his claims without the testimony of an expert witness.

**I.      Background**

In January 2001 Arnold was hired as a press brake operator for Milbank Manufacturing

Company. Milbank makes electrical meter boxes and breaker boxes out of metal. The press brake Arnold operated was a machine that bends sheet metal into various forms. Sheet metal is placed between operating gap in the press brake which contains any number of dies depending on the application. The operator then steps on a metal bar (a treadle) under the front of the machine which engages the press to close and crimp the metal into the desired shape.

On April 5, 2001, Arnold was sitting on the edge of a stool using a press brake machine when he lost his balance and placed his hand in the machine at the same time that he engaged the press brake with his foot. The press brake crushed four of his fingers, requiring the amputation of two fingers.

Defendant Amada sold the press brake machine at issue to Milbank Manufacturing Company in August of 1999. Amada was responsible for the design and manufacture of the press brake machine.

Arnold filed this complaint against Amada alleging defective design of the press brake machine and failure to warn of its dangers. Arnold endorsed Dr. David Peters as his expert witness in this case. After deposing Peters, Amada moved to exclude the testimony and opinions of Peters on the grounds that he was not qualified to be an expert witness in this case.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case

Fed. R. Evid. 702.

Rule 702 liberalized the rules governing the admissibility of expert testimony, and the Eighth Circuit has emphasized that "Rule 702 is one of admissibility rather than exclusion." Arcoren v. U.S., 929 F.2d 1235, 1239 (8th Cir. 1991). The party offering expert testimony has the burden to prove that it is reliable. Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006).

When a judge is faced with a challenge to expert testimony, the judge must ensure that an expert's testimony will be sufficiently reliable by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). In order to do this, a district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 142 (1999) (emphasis in original).

In Daubert, the Court identifies four factors judges may take into account to assist with the reliability determination. Those factors are: (1) whether a theory or technique . . . can be (has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) whether there is a "known or potential rate of error," and (4) whether there is "general acceptance"of the theory or technique within the scientific community. Daubert, 509 U.S. at 592-94.

However, these factors are not exclusive, rather, the "gatekeeping inquiry must be 'tied to

the facts' of a particular 'case.'" Kumho Tire Co., 526 U.S. at 150 (the "factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."). The Court in Kumho Tire recognized that engineering testimony, which is at issue in the present case, "rests upon scientific foundations, the reliability of which will be at issue in some cases." Id. at 150. The relevant issue is whether the expert could reasonably determine the cause of the incident at issue. Id. at 154.

Validation of expert methodology requires a more rigorous scientific analysis than the "I say it's valid, therefore it must be valid" statement from an expert. To satisfy the reliability requirement a plaintiff must establish by a preponderance of the evidence that the methodology is *scientifically* valid. Daubert 509 U.S. at 589-90. That requirement includes a showing that the methodology is generally applied properly to the facts at issue in the case based on *scientifically accepted methodology*. The United States Supreme Court has cautioned trial judges not to admit opinion evidence that is "connected to existing data only by *ipse dixit* of the expert," or that it is valid only because the expert says it is valid. General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997).

### III.    Analysis

The purpose of this court's inquiry regarding expert testimony is to make certain that the proffered expert is both qualified and his opinions are relevant and reliable. The Eighth Circuit has on several occasions considered cases where the district courts have excluded expert witnesses due their lack of familiarity with the exact device in question, their lack of experience with the safety devices they have proposed, and their lack of practical experience with both the

device and potential alternatives on both qualification and reliability grounds. See Shaffer v. Amada America, Inc., 335 F. Supp.2d 992 (E.D. Mo. 2003) (aff'd Shaffer v. Amada America, Inc., No. 03-1388, 2003 U.S. App. LEXIS 19335 (8th Cir. Sept. 1, 2003)) (proffered expert did not have appropriate familiarity or design experience with the device in question to be a expert); Anderson v. Raymond Corp., 340 F.3d 520 (8th Cir. 2003) (proffered expert had never designed or operated a forklift or a forklift guarding device); Dancy v. Hyster Co., 127 F.3d 649 (8th Cir. 1997) (proffered expert had never designed or seen in operation the safety device he proposed).

Peters proposed opinion is that the press brake was unreasonably dangerous because:

(1) "the press brake was in a defective condition at the time of the accident and that this defective condition existed at the time the press brake machine was sold ... [because] the press brake machine was not equipped with a hand-restraint system to prevent a user's hand from being crushed." and

(2) "the manufacturer of the press brake machine failed to warn the potential users, who could reasonably be anticipated to be operating the machine without full knowledge of all of its characteristics ... [although the machine had a warning of never to use the machine while hands or other body parts were in the die space] ... it did not warn that it was possible either to lose one's balance and have one's hands be thrust into the die space while at the same time engaging the pressing mechanism or inadvertently engaging the press while one's hands were in the machine."

**A.  Peter's Expertise Regarding Brake Presses**

The Eighth Circuit has reviewed district court decisions to exclude expert testimony on several occasions. In Dancy the Eighth Circuit affirmed a district court's striking of an expert witness. The proffered expert was a mechanical engineer and professor, but he had "never designed a forklift, a lift truck, or any other similar machine." 127 F.3d at 651. While the excluded expert in Dancy put forth a guarding theory that he claims could have prevented the accident, the court noted that the expert "has not tested this theory in any way, had not seen this

type of device on a forklift or any other similar machine, and had not even designed the device he suggested." Id. Similarly, in Anderson v. Raymond Corp., the excluded expert "admitted he was not an expert in the design or engineering of stand-up lift trucks. In addition, [he] had never designed or consulted on a designed of a stand-up lift truck, and had never designed a component part or a warning for a stand-up lift truck." Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003). In addition, the expert in that case "stated he had neither operated nor seen a stand-up lift truck before this case." Id. In Shaffer, a case involving a similar press brake machine accident, the Eighth Circuit affirmed the district court's decision which excluded a doctor of mechanical engineering who had "no experience with press brake designs, he has been a full-time professor since 1984, and he has never designed a press brake, a press brake guard, or an electro-pneumatic foot switch for a press brake." Shaffer, No. 03-1388, 2003 U.S. App. LEXIS 19335, at *4. In addition, the court cited the fact that the expert had "never tested press brakes or published any articles or research about press brakes" as significant. Id.

It is clear from his Curriculum Vitae that Peters, Arnold's proposed expert in the present lawsuit, is an impressive researcher, academic, and engineer. However, those credentials are not sufficient to make him an expert on the design of press brake machines. His Curriculum Vitae lists five fields of interest, that is, his research areas where he seeks funding and writes publications. Those areas of interest are dynamics, vibration, aeroelasticity, applied areodynamics and helicopters.

In his deposition, however, Peters continuously demonstrated his lack of experience and expertise with press brake machines. Like the excluded experts in Dancy, Anderson, and Shaffer, Peters has never operated a press brake machine nor has he ever designed one. He has

never taken a course or taught a course relating to press brake machines. Peters did not personally view the press brake machine in question before he wrote his report, and when he did view the machine, he took no measurements, spoke with no witnesses, and said he never inspected the machine, but rather just observed its use. Peters knows almost nothing about the press brake machine in this case, including the model number and basic design information like how to turn the device on and whether it was an up acting or down acting press brake. He has never worked in the press brake industry and cannot name a single manufacturer of press brakes. Prior to this case, Peters' practical experience with press brakes was limited to possibly observing one in operation during a summer internship in college.

Beyond his Curriculum Vitae, Peters has not demonstrated any substantive qualification to testify as an expert in this case. He knows almost nothing about press brake design, press brake manufacturing, or the specific press brake machine at issue in this case. He has never used or designed one of these machines. To qualify as an expert, the expert must possess "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Peters has not demonstrated any specialized knowledge with regard to press brakes and has not shown this court that he would employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 150.

Peters has no experience with press brake machine design or possible safeguarding techniques on press brakes nor has he, in his role as a professor and researcher, done any research or writing that could be used to demonstrate an academic expertise in either of these areas. As a result, Arnold has failed to establish that Peters has any specific expertise in the area of

safeguarding press brakes that would be of assistance to the jury. I find that Peters, while well qualified in other areas, is not qualified to give reliable testimony on the alleged defects of press brake machine at issue. This lack of personal knowledge and experience with regard to press brakes also strikes at the reliability of Peters' testimony. Id.

B.      **Testimony on the Press Brake's Condition**

Peters deposition testimony also demonstrates that his opinion that the design of the brake press was unreasonably dangerous is not reliable. Peters stated that because hand-restraints could have been used on the subject press brake machine "it is irrelevant as to whether or not I personally did any additional testing or whether or not I personally published any articles concerning this particual [sic] safeguarding measure for this particular instance." I disagree. While facts establish that hand-restraints have been used in practice on other press brake machines, Peters' methodology in reviewing this accident does not demonstrate the press brake machine at issue was unreasonably dangerous without hand-restraints.

Initially I note that Peters does not know the basic facts that surround the accident at issue. In his deposition Peters stated that he doesn't know the following information about the accident: how the press brake at issue was set up, the kind of dies in use, the gap opening setting, the closing speed, the size of the sheet metal piece Arnold was working with, the exact process that Arnold was engaged in, and where Arnold's hand or feet were at the time the accident occurred. (Peters' Dep. at 94-97) He did not do any research for this case regarding the design of press brakes (Peters' Dep. at 64). He is not aware of any press brake manufacturer who provides hand-restraints as standard or optional equipment on a press brake machine. (Peters' Dep. at 68) For his work on this case he has not spoken or corresponded with any manufacturer,

seller, or designer of a press brake regarding his opinions. (Peters' Dep. at 68-69) He acknowledges that the American National Standards Institute's (ANSI) standards for press brakes are important and relevant in the design of press brakes but that he has not reviewed them for this litigation and does not know what those standards entail. (Peters' Dep. at 70-71)

He does not know whether the press brake at issue was in compliance with ANSI standards when it was sold to Milbank. (Peters' Dep. at 71) He never ran or tested this machine in any fashion. He was aware in general of a guarding technique known as the "point of operation gap opening" but he does not know if that technique would be adequate on the subject machine (because he never inspected the machine or tested it). (Peters' Dep. at 87-88)

He does not know the name of any manufacturers of hand-restraints nor did he speak to anyone at Milbank about the use of hand-restraints at their facility. He does not know if Arnold was using hand-restraints whether Arnold would be able to reach the emergency stop buttons on the machine. (Peters' Dep. at 103-104) He made no attempt to perform an accident reconstruction in this matter. (Peters' Dep. at 110) He never considered any alternate theories on how the accident might have happened including the nature and extent of Arnold's own conduct. (Peters' Dep. at 110) He did not review maintenance or repair records of the machine nor has he read any accident reports from Milbank. (Peters' Dep. at 111-112) He does not know if any other accidents occurred on this subject press brake or any other press brakes at Milbank or elsewhere. (Peters' Dep. at 112) Although he reviewed some Occupational Safety & Health Administration (OSHA) standards he did not know that OSHA Instruction CPL 2-1.25(D)(7) adopted the ANSI standards (ANSI B11.3) for the safeguarding of power press brakes (he does not know what the ANSI standards entail). (Peters' Dep. at 113) When asked about the OHSA

standard from 29 CFR 1910.217 (entitled "Guidelines for Point of Operation Guarding of Power Press Brakes") he was not familiar with that standard. (Peters' Dep. at 117-118) He does not know if the operation Arnold was performing on the brake press when he was injured could have used a stroke limitation method as a good point of operation safeguard approved by OSHA standard 1910.217. (Peters' Dep. at 119-120).

Peters is not aware of any individuals or engineers who have evaluated his opinion that the press brake machine was unreasonably dangerous because it did not have hand-restraints. (Peters' Dep. at 124) He has not compared the design of Amada's press brake to any other manufacturers' press brakes. (Peters' Dep. at 127) He does not know what processes of the machine would be restricted with if hand-restraints were employed. (Peters' Dep. at 103 and 147) He has not done any investigation to determine if his defect theory is generally accepted by experts in the field of press brake safeguarding. (Peters' Dep. at 127) There has not been any peer review of his theory nor any evidence of a general acceptance of his theory that brake presses, like the one at issue, without hand restraints are unreasonably dangerous.

In sum, without any research, testing, or consultation regarding press brake designs Peters has determined that if Arnold had been using hand-restraints he would not have been injured when he slipped and placed his hand in the press. While this generalized proposition may have some merit it is not based upon sufficient facts or data to establish that the brake press machine without the hand-restraints was unreasonably dangerous. Peters does not have sufficient expertise in the field of press brakes to reach such a conclusion. Nor is his methodology reliable in reaching such a conclusion.

## C. Testimony on the Adequacy of the Press Brake's Warning

Dr. Peters also intends to testify as to the adequacy of the press brake's warning. In his report, Dr. Peters stated:

> "[i]t is also my opinion that the manufacturer of the press brake machine failed to warn the potential users, who could reasonably be anticipated to be operating the machine without full knowledge of all of its characteristics. In particular, although the press brake machine did have a warning . . ., it did not warn that it was possible either to lose one's balance and have one's hands be thrust into the die space while at the same time engaging the pressing mechanism or inadvertently engaging the press while one's hands were in the machine."

The Eighth Circuit has reviewed the ability of an expert to give testimony on warnings on several occasions. In Robertson v. Norton Co., the plaintiff hired a ceramics expert to testify to both a manufacturing defect and a deficient warning. Robertson v. Norton Co., 148 F.3d 905, 907 (8th Cir. 1998). Reviewing the district court's admittance of the expert's warning testimony, the court of appeals held the district court did abuse its discretion by allowing the expert to testify as to the sufficiency of the product's warning. Id. at 907-08. In so holding, the court noted that the expert had never designed a warning for a ceramic product, and that the expert's knowledge of ceramics "would not provide the expertise on 'questions of display, syntax, and emphasis' that the jury would expect from a bona fide warnings expert." Id. at 907 (citing Walton v. Sherwin-Williams Co., 191 F.2d 277, 286 (8th Cir. 1951)). In another case, the Eighth Circuit emphasized that the adequacy of warnings could not be assessed by experts on the product itself without additional qualification.

"These two witnesses were [not] qualified to express an opinion as to the adequacy of

warnings and directions. . . Whether or not a given warning is adequate depends upon the language used and the impression that it is calculated to make upon the mind of an average user of the product. Questions of display, syntax, and emphasis are involved in evaluating a warning, or set of directions, and upon those matters plant pathologists and entomologists are not necessarily qualified to speak." Walton v. Sherwin-Williams Co., 191 F.2d 277, 286 (8th Cir. 1951).

In addition, the Eighth Circuit considered warnings testimony in the context of Daubert's reliability test. The Robertson court found that the expert's opinion "was not supported by the kind of scientific theory, practical knowledge and experience, or empirical research and testing that permit assessment 'of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" Robertson, 148 F.3d at 907 (citing Daubert, 509 U.S. at 592-93). In finding that the expert's testimony "was not sufficiently reliable under Daubert," the court cited the expert's criticism of the warning without considering the feasibility of providing "a description of 'improper use' that would accurately and effectively encompass all the machines in which [the product] could be used." Id. at 907-08.

Arnold submits Pineda v. Ford Motor Co. to supplement his argument that Peters is a qualified and reliable warnings expert. See Pineda v. Ford Motor Co., 520 F.3d 237 (3rd Cir. 2008). However, because the Eighth Circuit has addressed the appropriate standards for proffered warnings experts in such detail, Pineda is not authoritative to this case.

Under Eighth Circuit case law, Peters is not qualified to give reliable testimony with regard to warnings. In his deposition, Peters testified that the engineering course that covers

machine warnings is Machine Design. Peters took one semester of Machine Design as an undergraduate in 1967. With exception of that one course, Peters has taken no other courses with information on warnings. Without personally inspecting the press brake and its warnings, Peters wrote his report where he stated the press brake warning was inadequate. However, Peters has no academic interests in the fields relating to warnings and safety instructions for any kind of product, including for press brakes. Peters testified that he had never designed a press brake machine, a guarding device for a press brake machine, or designed or analyzed warnings for a press brake machine. Peters has never published or presented on the topic of machine warnings generally, or anything regarding press brake safety specifically. It is clear from his own testimony that Peters has never designed any kind of warning, including one for a press brake; that he has no academic or professional experience with safety warnings; and his only experience with warnings is derived from a one semester undergraduate course in 1967. Peters can hardly be considered an expert on the adequacy of press brake warnings, as he fails to meet the requirements for a warnings expert. Peters is not capable of providing "the expertise on 'questions of display, syntax, and emphasis' that the jury would expect from a bona fide warnings expert." Robertson, 148 F.3d at 907.

In addition, Peters fails to meet the Daubert standard of reliability with regard to his potential warnings testimony. Peters' testimony is "not supported by the kind of scientific theory, practical knowledge and experience, or empirical research and testing that permit assessment 'of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" Robertson, 148 F.3d at 907 (citing Daubert, 509 U.S. at 592-93). Peters has not done any testing

to support his warning theories. He has never done any writing on warnings generally nor is he aware of any of the leading studies on warnings. Peters' warning theories have not been evaluated by any other engineer. Most tellingly, Peters admitted he had not taken time to think of what his warning for this machine would say or even what its size, color, or location would be. Based on these factors, Peters cannot meet the Daubert standard, failing to establish that he would be able to give reliable testimony to the jury with regard to Arnold's failure to warn claim.

Upon a thorough review of Peters' report and deposition I find that he is not qualified to provide testimony in this matter regarding the safety of the press brake at issue. Arnold has not established that Peters is an expert concerning the safety designs of press brakes and Peters methodology in reaching his conclusions and opinions is unreliable. As a result I will grant Amada's motion to exclude the testimony for Peters as an expert witness in this matter.[1]

**D.  Summary Judgment Motion**

Amada asserts that if Peters is excluded from testifying in this matter Amada is entitled to summary judgment because Arnold will not be able to establish, as a matter of law, that the subject press brake machine was unreasonably dangerous.

In considering whether to grant summary judgment, a district court examines the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] In his opposition to the motion to exclude Peters as a witness in this matter Arnold has offered the affidavit of another expert, Dr. Kenneth Solomon, alternatively to bolster Peters' opinions or to be substituted for Peters if his testimony is excluded. The deadline for disclosing experts in this matter expired more than six months before Solomon's un-notarized affidavit was submitted in this matter. In addition to being untimely, Solomon's affidavit is conclusory and fails to comply with Rule 26(a) on disclosing all required information. Amada has moved to strike Solomon's affidavit as an unpermissive attempt to disclose an expert. I agree and will grant Amada's motion to strike. I will also deny Arnold's independent motion to add Soloman as an expert witness for the same reasons.

affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

In order to recover on a product liability claim under Missouri law, a plaintiff must prove four elements: "(1) the defendant sold a product in the course of its business; (2) the product was then in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; (3) the product was used in a manner reasonably anticipated; and (4) the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." Columbia Mut. Ins. Co. v. Epstein, 239 S.W.3d 667, 671 (Mo. Ct. App. 2007) (citing Lay v. P & Health Care, Inc., 37 S.W.3d 310, 325 (Mo. Ct. App. 2000), Keener v. Dayton Elec. Mfg. Co., 445 S.W.2d 362, 364 (Mo. 1969)). The Eighth Circuit has upheld district court decisions to grant summary

judgment in product liability cases finding that the second element cannot be met after the dismissal of the expert. See Shaffer, 335 F. Supp.2d 992 (aff'd Shaffer v. Amada America, Inc., No. 03-1388, 2003 U.S. App. LEXIS 19335 (8th Cir. Sept. 1, 2003).

In Shaffer, a case strikingly similar to the present action, the district court granted summary judgment because the plaintiff would be unable to prove that the product "was in a defective condition that made it unreasonably dangerous to operate" without an expert. Id. at 997. The court reviewed depositions illustrating that the press brake manufacturer (Amada) offered some extra guarding devices, but the court found it did "not follow from this evidence that the [device] is defective without these devices or that they would have prevented the accident that occurred here." Id. Missouri law "is not so rigid as to require a manufacturer to sell only those products equipped with every available safety device. Id. (citing Linegar v. Armour of America, Inc., 909 F.2d 1150, 1154 (8th Cir. 1990)). "[T]he absence of an available safety feature does not, by itself, mean a product is defective. Missouri law, instead, 'demands that we focus our efforts on defects that are unreasonably dangerous.'" Id. at 998 (citing Sandage v. Bankhead Enter., Inc., 177 F.3d 670, 673 (9th Cir. 1999)). The court found these facts distinguishable from "simple" cases "where the circumstantial evidence present would allow a jury to find defect without expert testimony." Id. Rather, in a case involving "a complex piece of industrial machinery," "a finding of defect cannot rest on conjecture or speculation." Id. The court concluded "[w]ithout expert testimony, we are left with evidence of an accident. The fact that an accident happened, standing alone, does not establish a case of product defect." Id. (citing Winters v. Sears, Roebuck, & Co., 54 S.W.2d 565, 571 (Mo. Ct. App. 1997)).

The present case is clearly one, like Shaffer, where an expert is necessary to help a jury

determine whether a product was unreasonably dangerous when it was sold to Milbank. The press brake at issue weighs almost six tons and is "complex piece of industrial machinery," very similar to the one in Shaffer. Id. While Arnold maybe able to demonstrate to the jury that hand-restraints were plausible on the press brake, demonstrating the feasibility of hand-restraints without more does little to aid the jury in its determination of whether the press brake was unreasonably dangerous. An expert is necessary to help the jury understand how the press brake machine worked, how the accident occurred, how hand-restraints would have prevented the accident, how a different warning would have prevented the accident, and what design standards (ANSI) were applicable this machine. While Missouri law does allow circumstantial evidence to show a defect in "simple" cases, "a finding of defect cannot rest on conjecture or speculation." Id. A safer alternative design, like cars with air bags or anti lock brakes, does not automatically mean all products without the safer features are defective. Rather, an expert is necessary to help the jury to determine when a product without available safety features reaches the realm of unreasonably dangerous.

Arnold asserts that the Eighth Circuit's decision in Sappington v. Skyjack, Inc. stands for the proposition that he should be able to present his case to the jury without expert testimony. Sappington v. Skyjack, Inc., 512 F.3d 440 (8th Cir. 2008). In Sappington, a carpenter was killed while he operated a scissors lift, manufactured by defendant Skyjack. Id. at 443. The scissors lift tipped over after its rear wheels hit a hole in the concrete floor. Id. The next model of the scissors lift incorporated "pothole protection" into its design. Id. "Pothole protection is an industry term of art, referring to design features intended to enhance stability in the event a lift is driven into a depression or pothole." Id. Overruling the district court's grant of summary

judgment, the Eighth Circuit found "a plaintiff has no burden to prove product failure or malfunction, and '[t]he existence of a defect may be inferred from circumstantial evidence with or without the aid of an expert witness.'" Id. at 446 (citing Stinson v. E.I. DuPont De Nemours and Co., 904 S.W.2d 428, 431 (Mo. Ct. App. 1995), Klein v. Gen. Elec. Co., 714 S.W.2d 896, 900 (Mo. Ct. App. 1986)).

However, Sappington is factually distinguishable from the case at issue here. In Sappington, a lift meant to be used on construction sites tipped over because it hit a pothole, a common feature of construction sites. Thus, a jury could easily determine through the circumstances of the case and without an expert witness that the lift was unreasonably dangerous. In this case, the situation is far more complex. Arnold was working with a press brake machine, equipment likely to be completely unfamiliar to members of the jury, when he slipped and placed his fingers under the machine while it was engaged. Unlike a pothole on a construction site which causes a lift to topple over, a jury would not be able to determine based on circumstantial evidence whether the press brake machine was unreasonably dangerous. Rather, the jury in this case would need an expert to explain the complexities of the press brake machine and how its design made it unreasonably dangerous. Just like the Amada press brake in Shaffer, the press brake in the present case, made by the same manufacturer, is a complex piece of industrial machinery. The burden is upon Arnold to prove that the press brake design was unreasonably dangerous. Shaffer, No. 03-1388, 2003 U.S. App. LEXIS 19335 at 4. "To do so [Arnold] must show there is a safer, alternative, operable design for the press brake that injured him." Id. Such a showing cannot be made without expert testimony. Id.

Unlike the plaintiff in Sappington, Arnold will be unable to meet his burden under

Missouri law in showing the press brake machine was in a defective condition and unreasonably dangerous without the assistance of an expert.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Amada North America's Motion to Exclude the Testimony and Opinions of Plaintiff's Purported Design Expert, Dr. David Peters [#22] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff's motion to add Dr. Kenneth Solomon as an expert [#30] is **DENIED** and Defendant's motion to strike the affidavit of Dr. Solomon [#36] is **GRANTED**.

**IT IS FURTHER ORDERED that** Defendant's motion for summary judgment [#19] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of August, 2008.